IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAX C. STINE,** | : | **CIVIL ACTION** |
| *Plaintiff, pro se* | : | **NO. 23-1155** |
| | : | |
| **v.** | : | |
| | : | |
| **GEORGE LITTLE,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                      FEBRUARY 26, 2025

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Max C. Stine ("Plaintiff"), an inmate who allegedly has been held in solitary confinement in various Pennsylvania State Correctional Institutions since 2020, brings this action pursuant to 42 U.S.C. § 1983 for damages and to enjoin the defendants from continuing to hold him in solitary confinement. Plaintiff contends that the conditions of his confinement constitute cruel and unusual punishment under the Eighth Amendment and that his continued placement in solitary confinement without adequate review violates his Fourteenth Amendment procedural due process rights. Named as defendants are two former Secretaries of the Pennsylvania Department of Corrections, George Little ("Secretary Little") and John Wetzel ("Secretary Wetzel"), Superintendent of SCI Phoenix, Jaime Sorber ("Sorber"), Deputy Terra ("Terra"), Deputy Panasiewics ("Panasiewics"), Deputy Sipple ("Sipple"), LPM Matteo ("Matteo"), CHCA Huner ("Huner"), Unit Manager Luquis ("Luquis"), PSS Stickney ("Stickney") (collectively, the "Commonwealth Defendants"), and Psychiatrist Glushakow.[1]

---

[1] Defendant Glushakow has filed a separate motion to dismiss that is not the subject of this Memorandum Opinion.

Before this Court is the Commonwealth Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), in which they seek the dismissal of all of the claims asserted against them. (ECF 72). Plaintiff opposes the motion. (ECF 84).[2] The issues raised in the motion have been fully briefed and are ripe for disposition. For the reasons set forth, the Commonwealth Defendants' motion to dismiss is granted as to all claims asserted against them in their official capacity for monetary damages and all claims asserted against Defendants Terra, Huner, Sorber, Panasiewics, Sipple, Matteo, Luquis, and Stickney in their personal capacities but denied as to the claims asserted against Secretary Little and Secretary Wetzel in their personal capacities.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in the operative complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The facts relevant to the underlying motion and alleged in the complaint and amended complaint are as follows:[3]

> Plaintiff suffers from various mental illnesses. In 2019, while in the custody of the Pennsylvania Department of Corrections, Plaintiff was placed on the "Mental Health 'D' Roster," a placement that precludes an inmate from being placed in long-term solitary confinement.

---

[2] Though Plaintiff titles his response as a "Motion in Opposition of the Memorandum of Law in Support of Commonwealth Defendants' Motion to Dismiss," this Court has construed Plaintiff's filing as his opposition to the Commonwealth Defendants' motion to dismiss.

[3] In an effort to fully glean the facts on which Plaintiff bases his claims, this Court has liberally construed both Plaintiff's original complaint, (ECF 2), and his amended complaint, (ECF 64). The facts set forth herein are taken from those filings and, where necessary, attachments thereto.

Plaintiff was placed in solitary confinement[4] sometime in 2020. Plaintiff submitted various written grievances and/or inquiries to various individuals within the DOC, regarding his mental health and placement in solitary confinement, including the following:

- December 29, 2021: Plaintiff wrote to Secretaries Little and Wetzel concerning his mental health issues, suicidal thoughts, and low IQ score while housed in solitary confinement.
- June 17, 2021: Plaintiff received a response to correspondence addressed to Secretary Wetzel, indicating that Plaintiff's placement was under review and noting that he had been meeting with treatment providers.
- April 1, 2022: Plaintiff wrote to Luquis, Sober, Panasiewics, and Sipple, concerning his mental health issues and advising that he was not supposed to be in solitary confinement for so long. Plaintiff received written responses to each of his grievances, but he remained in solitary confinement.
- July 12, 2022: Plaintiff wrote to Stickney advising that his mental health continues to worsen from his placement in solitary confinement. Stickney responded to Plaintiff's grievance by answering Plaintiff's inquiry as to the date on which he went to "P.O.C." when he became suicidal.

Plaintiff alleges that the conditions of his solitary confinement include:

- Prohibition from having any contact with any visitors, including family members;
- Being allowed only one virtual visit a week, while handcuffs are secured to his waist with a leather band and his ankles are shackled to a bench;
- Being given only ten to fifteen minutes to eat his meals alone in his cell;
- Being given lower quality food than inmates in the general prison population;
- Prohibition from participating in any educational programs which are available to the general prison population;
- Imposition of extreme limits on personal property;

---

[4] Throughout his filings, Plaintiff refers to his placement in "solitary confinement," though also referencing the Restricted Release List ("RRL"). Plaintiff describes the RRL as "a state of indefinite administrative custody where an inmate is held in solitary confinement in the RHU and is subject to severe restrictions on his ability to interact with anyone whether staff, other inmates or visitors from the outside the prison." (Compl, ECF 2, at 25). Though this Court recognizes there may be distinctions between the DOC's various restrictive housing programs, this Memorandum Opinion will generally utilize the term "solitary confinement" as that term is used in Plaintiff's filings.

3

- Restricted from communal worship; and
- Denial of mental health treatment.

Plaintiff alleges that his mental health problems have been made worse by the conditions of his solitary confinement. He also alleges that his conditions of confinement and their effect on his mental health have led him to suffer two mental break downs and two suicide attempts. Since being placed in solitary confinement, Plaintiff "has never once had the opportunity to challenge his placement on RRL, with Secretary Wetzel or Little or be heard in any way, although the Secretary of Corrections is the only person with authority to remove his RRL designation." (Compl., ECF 2, at ¶ 36; *see also* Am. Compl., ECF 64, at pp. 42-44, 46).[5]

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) governs motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210–11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Threadbare recitals of

---

[5] All citations to the amended complaint include the pagination assigned by the Court's Electronic Case Filing ("ECF") system.

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**DISCUSSION**

As noted, Plaintiff asserts civil right claims under § 1983 premised on the Commonwealth Defendants' alleged violation of his Eighth and Fourteenth Amendment rights. Reading Plaintiff's pleadings and supportive filings liberally, it appears that Plaintiff's claims against the Commonwealth Defendants are all premised on his contention that his placement and continued placement in solitary confinement violate his Eighth and Fourteenth Amendment rights. Specifically, Plaintiff contends that each of the Commonwealth Defendants acted with deliberate indifference to his serious mental health needs by failing to intervene in his continued and long-term confinement in solitary confinement. (*See* Pl. Opp., ECF 84, at pp. 7, 9).

***Claims Asserted Against the Commonwealth Defendants in Their Official Capacities***

The Commonwealth Defendants argue that any claims asserted against them in their official capacities should be dismissed because these claims are not cognizable under § 1983. This Court agrees with respect to Plaintiff's claims for monetary relief but disagrees with respect to his claims against Secretaries Wetzel and Little for injunctive relief.

By its terms, § 1983 creates no substantive rights; it merely provides remedies for the deprivation of rights established elsewhere. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Garrett v. Wexford Health*, 938 F.3d 69, 94 (3d Cir. 2019). A state, however, is not a "person"

within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). It is well-settled that a suit against a state official in his or her official capacity is not a suit against the official but is rather a suit against the official's office. *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the state itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"). The Supreme Court noted, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10.

Each of the Commonwealth Defendants is an employee of the Pennsylvania Department of Corrections ("DOC"), an administrative department of the Commonwealth of Pennsylvania. *See* 71 Pa. Con. Stat. § 61. As such, Pennsylvania DOC employees share in the Commonwealth's immunity when they are sued in their official capacities. *See Turner v. Att'y Gen. Pa.*, 505 F. App'x 95, 98-99 (3d Cir. Dec. 3, 2012). Thus, to the extent Plaintiff is advancing claims against each of the Commonwealth Defendants in their *official* capacities for monetary damages, the motion to dismiss is granted and any and all of those claims are dismissed. To the extent Plaintiff is advancing claims against Secretaries Wetzel and Little seeking injunctive relief, such claims will be permitted to proceed.[6]

### *Plaintiff's § 1983 Claims Against Defendants Huner, Terra, Sorber, Panasiewics, Sipple, Matteo, Luquis, and Stickney*

The Commonwealth Defendants argue that Plaintiff's § 1983 claims against Defendants Huner, Terra, Sorber, Panasiewics, Sipple, Matteo, Luquis, and Stickney should be dismissed

---

[6] This Court notes that Secretary Wetzel and Secretary Little no longer serve as Secretary of the Department of Corrections. Plaintiff's official capacity claims against Secretaries Wetzel and Little will be deemed to be asserted against their current successor pursuant to Rule 25(d).

6

because Plaintiff has failed to allege facts sufficient to plausibly show the requisite personal involvement by these individual defendants in the alleged constitutional violations. This Court agrees.[7] As such, all claims against these individual defendants are dismissed.

To establish individual liability under § 1983, "[a] defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As such, to assert a viable claim, a plaintiff must allege facts sufficient to raise a plausible inference that the defendants were personally involved in violating the plaintiff's constitutional rights. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1990–91 (3d Cir. 1995). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. Such allegations "must be made with appropriate particularity." *Id.* Where a pleading alleges "no factual allegations whatsoever" against an individual defendant, dismissal is warranted. *Walker v. Mathis*, 2016 WL 2910082, at *7 (E.D. Pa. May 19, 2016).

Though Plaintiff's original complaint names both Defendant Huner and Defendant Terra as defendants in this action, neither the original complaint nor the amended complaint contain any allegations of personal involvement by either of these two defendants. Indeed, the amended complaint contains no reference to Defendant Huner or Defendant Terra whatsoever. Accordingly, all claims against Defendants Huner and Terra are dismissed.

As to Defendants Sorber, Panasiewics, Sipple, Matteo, Luquis, and Stickney, Plaintiff's allegations against these individuals are based entirely on their participation in the grievance process and not in any way on these individual defendants' provision of medical treatment or their placement of Plaintiff in solitary confinement. (*See* Am. Compl., ECF 64, at pp. 37-42).

---

7   For the reasons discussed below, Plaintiff's claims against Secretaries Wetzel and Little survive.

Specifically, Plaintiff alleges that each of these individual defendants received and/or responded to one or more of his grievances with respect to his medical care and/or placement in solitary. (*Id.*). However, Plaintiff does not allege that any of these individual defendants was responsible for providing Plaintiff medical care or placing or keeping Plaintiff in solitary confinement. Indeed, in both his amended complaint and his response to the Commonwealth Defendants' motion to dismiss, Plaintiff acknowledges that none of these individual defendants had responsibility or authority to release Plaintiff from solitary confinement. (Am. Compl., ECF 64, at p. 42; Pl. Opp., ECF 84, at p. 9). Instead, Plaintiff merely alleges that as a result of these individual defendants' receipt of and responses to Plaintiff's various grievances, these individual defendants were aware of his alleged constitutional violations.

"[M]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege a deliberate indifference claim." *Williams v. Ferdarko*, 807 F. App'x 177, 181 (3d Cir. 2020) (citing *Rode*, 845 F.2d at 1208); *see also Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Bullock v. Hice*, 2022 WL 4540174, at *7 (W.D. Pa. May 3, 2022) (recommending dismissal of § 1983 claims against individual prison officials where claims premised solely on those individuals' participation in the prison grievance procedure), *adopted*, 2022 WL 4535246 (W.D. Pa. Sept. 28, 2022); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). Because Plaintiff does not allege any personal involvement by any of these individual defendants with respect to his medical care or placement

8

or continued placement in solitary confinement, Plaintiff's § 1983 claims against Defendants Sorber, Panasiewics, Sipple, Matteo, Luquis, and Stickney are dismissed. *See Wayne v. Clark*, 2022 WL 17993131, at *4 n.44 (E.D. Pa. Dec. 29, 2022) (dismissing § 1983 claims against correctional officers who "had no decision-making authority" in the inmate's placement in solitary confinement); *Williams*, 807 F. App'x at 180 (dismissing medical care claims against correctional officers who had no responsibility other than administrative oversight of inmates' medical care).

### ***Plaintiff's Eighth Amendment Claims Against Secretaries Wetzel and Little***

The Commonwealth Defendants also argue that Plaintiff's § 1983 claims against Secretaries Wetzel and Little should be dismissed because Plaintiff has not alleged facts sufficient to show these individual defendants' personal involvement in Plaintiff's alleged harms. This Court disagrees. Courts have consistently held that Secretaries Wetzel and Little, in their capacities as Secretary of the Department of Corrections, had the authority to place and keep an inmate in solitary confinement. *See, e.g.*, *Spotz v. Wetzel*, 2024 WL 4231202, at *9 (M.D. Pa. Feb. 1, 2024); *Wayne v. Clark*, 2022 WL 17993131, at *4 (E.D. Pa. Dec. 29, 2022); *Morris v. Zaken*, 2022 WL 17340388, at *7 (W.D. Pa. Nov. 30, 2022). Plaintiff has alleged such authority here. (*See* Compl., ECF 2, at ¶ 35; Am. Compl., ECF 64, at p. 42). As discussed more fully below, Plaintiff has also alleged facts sufficient to plausibly show that Secretaries Wetzel and Little were aware of his mental illnesses and the harm Plaintiff's placement in solitary confinement posed to his mental health. As such, the Commonwealth Defendants' arguments with respect to a lack of personal involvement by these two individual defendants fail.

Regarding the merits of Plaintiff's Eighth Amendment claims against Secretaries Wetzel and Little, the Eighth Amendment protects inmates from "cruel and unusual punishment." U.S. Const. amend. XIII. "The Eighth Amendment 'prohibits any punishment which violates civilized

9

standards and concepts of humanity and decency.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). The United States Supreme Court has interpreted this prohibition as "impos[ing] affirmative duties on prison officials 'to provide humane conditions of confinement.'" *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To adequately allege that prison officials violated an individual's Eighth Amendment rights, a plaintiff must allege facts sufficient to plausibly show (1) a deprivation that was "sufficiently serious," and (2) the prison officials had "a sufficiently culpable state of mind." *Thomas*, 948 F.3d at 138 (quoting *Farmer*, 511 U.S. at 834).

The first element, the deprivation element, is adequately pled when the factual allegations portray conditions where the inmate is denied "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). To meet this requirement, a plaintiff must plead facts to show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Pleading a substantial risk of serious harm is a less demanding standard than alleging conditions posing "a probable risk of harm." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

As to the first element, *i.e.*, serious deprivation, the Third Circuit has held that factual allegations comparable to those alleged here were sufficient to allege conditions that pose a substantial risk of serious harm. *See Clark v. Coupe*, 55 F.4th 167 (3d Cir. 2022); *Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017). In *Palakovic*, an inmate "diagnosed with a number of serious mental disorders" was repeatedly placed in solitary confinement during the thirteen months he spent in a Pennsylvania prison. 854 F.3d 209, 217, 225 (3d Cir. 2017). Like Plaintiff, Palakovic was isolated with limited opportunity for any social interaction during these stays. *Id.* at 217. Palakovic's parents, who brought the claim on their son's behalf, alleged prison officials knew the

conditions of confinement "were inhumane for him in light of his mental illness" because the majority of the self-harm incidents occurred in the prison's solitary confinement cells. *Id.* at 225. Palakovic ultimately committed suicide in one of these cells. *Id.* at 217. The Third Circuit held that Palakovic's parents sufficiently pled an Eighth Amendment claim by alleging that prison officials — including Secretary Wetzel — imposed conditions posing a substantial risk of serious harm to their mentally ill son. *Id.* at 225-26.

In so holding, the Third Circuit acknowledged "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation." *Id.* at 225. Citing to its previous decision in *Williams v. Sec. Pa. Dep't of Corrections*, 848 F.3d 549 (3d Cir. 2017), the Third Circuit recognized "a growing consensus" that solitary confinement conditions can cause "severe and traumatic psychological damage" that in turn leads to high rates of self-harm or suicide in inmates who had spent time in solitary confinement. *Id.* More recently, relying on its decision in *Palakovic*, the Third Circuit held that allegations establishing "that [a plaintiff] was kept in conditions of almost complete isolation for seven months by officials *who knew him to be seriously mentally ill*—are sufficient to allege the requisite deprivation." *Clark*, 55 F.4th at 180 (emphasis added).

This Court finds that Plaintiff has adequately pled an objectively serious deprivation. Similar to the plaintiffs in the Third Circuit's decisions in *Clark* and *Palakovic*, here, Plaintiff has alleged that he was placed and has been kept in solitary confinement since sometime in 2020 by officials who knew him to be suffering from various mental illnesses. The Third Circuit has held that "prolonged solitary confinement" is objectively serious because it poses a substantial risk of serious psychological and physical harm. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441–44, 451 (3d Cir. 2020). As noted, the Third Circuit has recognized a "robust body of legal and scientific

11

authority recognizing the devastating mental health consequences caused by long-term isolation." *Clark*, 55 F.4th at 179 (quoting *Palakovic*, 854 F.3d at 225). The "severe and traumatic psychological damage" can "lead to high rates of self-harm or suicide in inmates who ha[ve] spent time in solitary confinement." *Id.* These risks are present for inmates, like Plaintiff, who have been in solitary confinement for prolonged periods of time. *See, e.g.*, *Palakovic*, 854 F.3d at 216–17. Plaintiff has alleged that he suffers from various mental illnesses. He has also alleged the detrimental effects the conditions have had on his psychological health. These allegations, if proven, show that his conditions of confinement were objectively serious.

The second element, the official's culpable state of mind, is subjective and requires an inmate to plead facts sufficient to plausibly show that prison officials acted with deliberate indifference. *Farmer*, 511 U.S. at 834. Deliberate indifference is sufficiently alleged where an inmate pleads facts showing that officials knew of, but disregarded, that the prison conditions posed "an excessive risk to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

To meet this element, Plaintiff alleges that Secretaries Wetzel and Little knew of his mental illness and the dangers posed to his psychological health by prolonged isolation but failed to intervene in his continued solitary confinement. As the Third Circuit and other courts in this Circuit have now repeatedly recognized, there is an "increasingly obvious reality that extended stays in solitary confinement can cause serious damage to mental health." *Palakovic*, 854 F.3d at 226; *see also Porter*, 974 F.3d at 441 ("It is well established in both case law and scientific and medical research that prolonged solitary confinement . . . poses a substantial risk of serious psychological and physical harm."); *Williams*, 848 F.3d at 567–68 (citing studies of inmates in solitary confinement documenting high rates of suicide and self-mutilation, which are "believed

to be maladaptive mechanisms for dealing with the psychological suffering that comes with isolation."). Viewing Plaintiff's pleadings with this "reality" in mind, Plaintiff's allegations that he was kept in solitary confinement by prison officials who were aware of the effects of prolonged isolation on his already severely compromised mental health are sufficient to meet the deliberate indifference requirement. As such, this Court finds that Plaintiff has alleged facts sufficient to plausibly show that Secretaries Wetzel and Little held the requisite culpable state of mind. Accordingly, the Commonwealth Defendants' motion is denied with respect to the Eighth Amendment claims asserted against Secretaries Wetzel and Little.

### *Plaintiff's Fourteenth Amendment Procedural Due Process Claims Against Secretaries Wetzel and Little*

Plaintiff also asserts claims for violation of his Fourteenth Amendment procedural due process rights premised on his allegation that his placement in solitary confinement was not subject to periodic review. In response to this claim, the Commonwealth Defendants argue *only* that Plaintiff has failed to allege facts sufficient to implicate a protected liberty interest. For the reasons set forth below, this Court disagrees.

When analyzing a procedural due process claim based on a stay in solitary confinement, the first step is to determine whether the plaintiff has alleged a deprivation of a constitutionally protected liberty interest. *Shoats v. Horn*, 213 F.3d 140, 143-44 (3d Cir. 2000). If such a deprivation is alleged, the second step is to determine whether the plaintiff received "all of the process he was due." *Id.* at 143. To establish a liberty interest under the Fourteenth Amendment in a challenge to the conditions of confinement, "the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams*, 848 F.3d at 559 (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (omission and emphasis in original).

A prison official can deprive an inmate of his constitutionally protected liberty interest by keeping him in solitary confinement if such a stay "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine the significance of the alleged hardship, courts consider the length and nature of the stay in confinement. *See Williams*, 848 F.3d at 560. In this case, Plaintiff's purported indefinite stay in solitary confinement since sometime in 2020 without receiving adequate care for his existing, substantial mental health needs, is sufficient to allege a hardship outside of those imposed in the ordinary course of prison life. *See Williams*, 848 F.3d at 561 (finding that six years and eight years in solitary confinement presented an atypical hardship); *Shoats*, 213 F.3d at 144 (finding that eight years in solitary confinement presented an atypical hardship).

Having found that Plaintiff sufficiently alleged an atypical and significant hardship, the Court must determine whether Plaintiff alleged that he did not receive the process to which he was entitled. *Shoats*, 213 F.3d at 143.[8] In the context of an inmate's placement in solitary confinement, due process requires: (1) a "regular and meaningful review of [Plaintiff's] continued placement" in solitary; (2) a "statement of reasons for the continued placement;" (3) a "meaningful opportunity to respond to the reasons provided" for the continued placement; and (4) a hearing. *Porter v. Pa. Dep't of Corrs.*, 947 F.3d 431, 440 (3d Cir. 2020) (quoting *Williams*, 848 F.3d at 576).

Here, Plaintiff alleges he was not given an "adequate" or "meaningful long-term solitary confinement hearing" or an "adversarial procedure to submit his assertions to Defendant Secretary Little and Defendant Wetzel . . . ." (Am. Compl., ECF 64, at pp. 13, 16). Given Plaintiff's alleged indefinite and lengthy stay in solitary confinement and the absence of opportunity for meaningful review, the Court finds that he has alleged grounds to be entitled to some amount of process for

---

[8] This Court notes that the Commonwealth Defendants do not make any argument with respect to the second inquiry, *i.e.*, whether Plaintiff was provided the process to which he was entitled.

continued detention. Thus, Plaintiff alleges viable procedural due process claims against Secretaries Wetzel and Little.

**CONCLUSION**

For the reasons set forth, the Commonwealth Defendants' motion to dismiss is granted with respect to all claims asserted against the Commonwealth Defendants in their official capacities for monetary damages and all claims asserted against Defendants Terra, Huner, Sorber, Panasiewics, Sipple, Matteo, Luquis, and Stickney in their personal capacities. The motion to dismiss is denied with respect to the claims asserted against Secretaries Wetzel and Little in their personal capacities. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.